| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | NOT FOR PUBLICATION |

------------------------------------------------------------------------x
In re:                                                                  :       Chapter 7
    Marita Padiernos Rosado,                         :
                                                                    :
            Debtor. :       Case No. 24-11851 (JLG)
------------------------------------------------------------------------x
Lorelei Sanchez Araneta,                                                :
                                                                    :
            Plaintiff, :
                                                                    :
v.                                                                      :       Adv. P. No.: 25-01030 (JLG)
                                                                    :
Marita Padiernos Rosado,                                                :
                                                                    :
            Defendant. :
------------------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER RESOLVING
MOTION FOR DEFAULT JUDGMENT**


**A P P E A R A N C E S :**


LESTER KORINMAN KAMRAN & MASINI, P.C.
*Attorneys for Plaintiff*
600 Old County Road, Suite 330
Garden City, New York 11530
By:    Peter K. Kamran, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[1]

Lorelei Sanchez Araneta (the "Plaintiff") filed her Amended Complaint (the "Am. Complt.")[2] against Marita Padiernos Rosado (the "Debtor") seeking a determination that the scheduled, but unliquidated debt due and owing to Plaintiff (the "Araneta Debt") is nondischargeable under section 523(a)(2)(A) and/or section 523(a)(6) of the Bankruptcy Code. The Plaintiff also seeks a declaratory judgment that MK Global, Inc. ("MK Global"), Debtor's wholly owned corporation, is the Debtor's alter ego. The matter before the Court is the Plaintiff's motion (the "Motion")[3] for a default judgment against the Debtor pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Rule 55").[4] The Debtor did not respond to the Motion.

The Court conducted a hearing on the Motion. Plaintiff appeared at the hearing through counsel. The Debtor did not appear at the hearing. The Court heard argument from the Plaintiff. At the Court's request, Plaintiff submitted a supplemental memorandum to address certain issues that the Court raised at the hearing (the "Supplement").[5] For the reasons set forth herein, the Court grants in part and denies in part the Motion.

---

[1] Capitalized terms shall have the meanings ascribed to them herein. References to "AP ECF No. __" are to documents filed on the electronic docket of this Adversary Proceeding No. 25-01030. References to "ECF No. __" are to documents filed on the electronic docket of Debtor's chapter 7 case, Case No. 24-11851.

[2] *Amended Complaint*, AP ECF No. 5.

[3] *Motion for Default Judgment*, AP ECF No. 18.

[4] Rule 55 is made applicable herein pursuant to Rule 7055 of the Federal Rules of Bankruptcy Procedure.

[5] *Plaintiff's Supplement on Motion for the Entry of an Order for Default Judgment and Default Judgment Against the Defendant*, AP ECF No. 23.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND[6]

On or about June 2022, the Plaintiff was introduced to the Debtor at a presentation regarding a real estate investment opportunity the Debtor was offering through her wholly owned company, MK Global. Am. Complt. ¶ 6. At the presentation, the Debtor offered marketing materials outlining an investment opportunity with MK Global. *Id.* In substance, the materials stated that the Debtor's real estate investment opportunities in distressed real property had historically outperformed stocks and bonds while also providing tax benefits and portfolio diversity. *Id.* The specific investment opportunities involved real estate producing rental income and real estate already owned that was to be renovated and sold for a profit. *Id.*

Following the presentation, the Debtor arranged for the Plaintiff and other prospective investors to visit some of the properties the Debtor claimed were among MK Global's portfolio of investment properties. *Id.* ¶ 7. The Plaintiff was interested in pursuing the opportunity and, thereafter, met with the Debtor at the Debtor's office in Manhattan. *Id.* ¶¶ 8-9. At that meeting the Plaintiff expressed her interest in investing with MK Global, but advised the Debtor that she "needed [the money] back relatively quickly because that was all she had at the time to support herself and her two children." *Id.* ¶ 9. The Debtor assured the Plaintiff that the money would be

---

[6] For purposes of the Motion, the well-pleaded facts in the Amended Complaint are deemed admitted. *See Treasures London Ltd. v. Keswani (In re Keswani)*, Nos. 20-10315, 20-01084, 2021 WL 1940802, at *4 (Bankr. S.D.N.Y. May 13, 2021) ("[A] default is an admission of all well-pleaded allegations against the defaulting party.").

"safe and secure and agreed to return the money within six months and make monthly payments to [the Plaintiff] during the six-month period in the amount of $1,250.00 per month." *Id.* Based on these representations, the Plaintiff gave $30,000 (the "Funds") to the Debtor. The Debtor, on behalf of herself and MK Global, as debtor, executed and delivered a promissory note to the Plaintiff in the principal amount of $30,000 (the "Note"). *Id.* ¶ 10.[7] The Debtor sent the Plaintiff the first monthly "dividend" due under the Note, and then "one or two additional payments of $500.00." *Id.* ¶ 11. Debtor failed to make any further payments to Plaintiff and the Funds were not returned to Plaintiff. *Id.*

On October 28, 2024, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code (the "Petition").[8] On July 3, 2025, the chapter 7 trustee filed the Trustee's Report of No Distribution. The Debtor did not return the Funds to Plaintiff. In her Schedules, the Debtor lists a debt owed to Plaintiff in an "unknown" amount, i.e., the Araneta Debt. *See* Schedule F, ¶ 4.25.[9] After Plaintiff learned of the Debtor's bankruptcy, she "continually questioned" the Debtor regarding the return of the Funds and was repeatedly promised "next week" by the Debtor. Am. Complt. ¶ 12.

The Plaintiff spoke to others who had been sold on the same investment opportunity and been promised secure investments with returns that did not materialize. *Id.* ¶ 13. They advised Plaintiff they too invested funds with the Debtor based on her promises that the funds would be invested in real estate and that they would receive monthly payments, but that they did not receive those payments and Debtor did not return their funds to them. *Id.* Plaintiff maintains that the Debtor

---

[7] The Note is annexed as Exhibit 3 to the Motion.

[8] *Chapter 7 Voluntary Petition for Individuals Filing for Bankruptcy*, ECF No. 1.

[9] *See Schedule E/F*, ECF No. 8.

4

was "was using MK Global as her alter ego, using MK Global to run a [P]onzi scheme by bringing in new investments to try and pay prior obligations and as such a finding of alter ego is warranted." *Id.* ¶ 14. Through the alleged Ponzi scheme, the Debtor caused the Funds to be diverted and used the Funds for matters other than the intended investment, such as to pay her personal expenses. *Id.* ¶ 15.

**The Amended Complaint**

On February 4, 2025, Plaintiff, acting pro se, filed a complaint against the Debtor.[10] On April 29, 2025, Plaintiff, through counsel, filed the three-count Amended Complaint seeking a judgment that any debt owed to the Plaintiff by Debtor is excepted from discharge under sections 523(a)(2)(A) and/or 523(a)(6) of the Bankruptcy Code, and that MK Global is the Debtor's alter ego.

In support of her first cause of action ("Count One"), the Plaintiff alleges she entrusted the Funds with Debtor and the Araneta Debt is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code because the Debtor "falsely represented to [the Plaintiff] that her investment would be secure and used for an investment in real estate." *Id.* ¶ 18. Plaintiff asserts that the Debtor caused MK Global to utilize the Funds for purposes other than a real estate investment including, but not limited to, paying the Debtor's personal expenses. *Id.* ¶ 19. She says that she has suffered significant damages by reason of those actions. *Id.* Plaintiff maintains she is entitled to a judgment under Count One declaring the Araneta Debt nondischargeable. *Id.* ¶ 20.

In support of her second cause of action ("Count Two"), Plaintiff contends that Debtor willfully and maliciously caused significant damages to her when, without any just cause or

---

[10] *Complaint*, AP ECF No. 1.

5

reasonable excuse, she caused MK Global to utilize the Funds for purposes other than a secure real estate investment, including paying the Debtor's personal expenses. *Id.* ¶ 23. Plaintiff asserts that "having willfully and maliciously caused significant damage to [her] in violation of 11 U.S.C. § 523(a)(6), [Debtor] should not be entitled to a discharge of any debt or obligation owed [by Debtor] to Plaintiff . . . ." *Id.* ¶ 24. She seeks entry of an Order and Judgment against the Debtor declaring the Araneta Debt non-dischargeable.

In her third cause of action ("Count Three"), the Plaintiff seeks a judgment declaring that MK Global is the Debtor's alter ego. *Id.* ¶ 27. She alleges that, "at all times relevant to this [Amended] Complaint, MK Global was the alter ego of the Defendant and as such all of the assets of MK Global, if any, and the liabilities of MK Global, should be deemed to be the assets and liabilities of the [Debtor]." *Id.* ¶ 26.

**Debtor's Response to Amended Complaint**

The Debtor did not file an answer or otherwise respond to the Amended Complaint. On July 30, 2025, the Clerk's Office entered a default against the Debtor.[11]

**The Motion**

The Plaintiff seeks entry of a default judgment on the Amended Complaint pursuant to Rule 55. Motion ¶ 2. She contends that the Araneta Debt is excepted for discharge under section 523(a)(2)(A) because it arises from Debtor's "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." *Id.* ¶ 16. Specifically, she argues Debtor "falsely represented to [her] that her investment would be secure and used for an investment in real estate going so far as to provide Plaintiff with what purports to

---

[11] *Clerk's Entry of Default against Marita Padiernos Rosado*, AP ECF No. 13.

6

be a mortgage note (but no mortgage)." *Id.* ¶ 18. She maintains that the Debtor caused MK Global to use funds entrusted with Debtor for a secure real estate investment for other purposes, including but not limited to paying her personal expenses, thereby causing Plaintiff significant damages. *Id.* ¶ 19.

Plaintiff asserts that to obtain a judgment under Count Two declaring the Araneta Debt nondischargeable under section 523(a)(6), she must demonstrate "first, that the debtor acted willfully, second, that the debtor acted maliciously, and third, that the debtor's willful and malicious actions caused injury to the creditor or its property." *Id.* ¶ 22. She contends that Debtor solicited an investment from her and assured her the investment would be secured. *Id.* ¶ 25. However, the investment was not secure, and the Debtor knew that the investment would not be secured when she solicited the investment from the Plaintiff, because the Debtor had done the same to other previous "investors." *Id.* ¶¶ 25-26. She says that "any debt or other obligation owed to Plaintiff" by Debtor is nondischargeable under section 523(a)(6) because it stems from willful and malicious injuries caused by the Debtor. *Id.* ¶ 27.

In support of Count Three, the Plaintiff argues that "[a] party seeking to pierce the corporate veil must show complete domination of the corporation in respect to the transaction attacked and that such domination was used to commit a fraud or wrong against the plaintiff." *Id.* ¶ 28. She maintains that she is entitled to entry of a default judgment under Count Three because it is apparent that the Debtor utilized her wholly owned company MK Global to solicit investments from the Plaintiff and other individuals which they were assured would be secured by real estate. However, these investments were never secured, were not returned, and were never even accounted for by the Debtor. *Id.* ¶¶ 29-30.

7

**The Supplement**

After the hearing, the Court directed the Plaintiff to file a supplemental memorandum of law addressing "(i) whether [MK Global] is a necessary party to the Third Cause of Action, and (ii) any other issue related to the Motion that the Plaintiff, in her discretion, seeks to put before the Court."[12] Plaintiff timely filed the Supplement. In it, Plaintiff: (i) asserts that MK Global is not a necessary party to the Amended Complaint, Supplement at 2, (ii) contends that, in any event, Debtor is indebted to Plaintiff, as in her Schedules, Debtor admitted that she is indebted to Plaintiff in an "unknown" amount, *id.*, and (iii) as necessary, requests either (a) leave to amend the Amended Complaint to name MK Global as a defendant, or (b) leave to file a motion to amend the Amended Complaint, *id.* at 3.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004). It "provides a two-step process for obtaining a default judgment." *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 54(c).

---

[12] *See* Minutes of Proceeding, AP ECF No. 22.

8

However, "a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of right simply by virtue of a defendant's procedural default." *Gould v. Marconi Dev. Grp., LLC*, No. 19-1454, 2020 WL 2042332, at *2 (N.D.N.Y. Apr. 28, 2020) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). That is because the defaulting party does not admit conclusions of law. The trial court must determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

To meet that burden, a plaintiff must demonstrate that "the allegations in the complaint, deemed admitted, establish the respondent's liability as a matter of law . . . ." *Despins v. HCHK Technologies, Inc. (In re Kwok),* 663 B.R. 177, 187 (Bankr. D. Conn. 2024) (citing *Mickalis Pawn Shop,* 645 F.3d at 137). "Essentially, a court must consider whether a claim for relief would survive a motion to dismiss." *Id.* (citing *Mickalis Pawn*, 645 F.3d at 137 n. 2). Where a complaint is deficient, a court will deny a request for default. *In re Keswani*, 2021 WL 1940802, at *4.

Accordingly, in resolving the Motion, the Court will assess the legal sufficiency of the allegations in support of the Amended Complaint "under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, No. 18-706, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019) (citation omitted).

## **ANALYSIS**

Rule 4007(a) of the Federal Rules of Bankruptcy Procedure allows a creditor to file a complaint to obtain a determination of the dischargeability of any debt. Fed. R. Bankr. P. 4007(a). Pursuant to section 101(12), the term "debt" means liability on a claim. 11 U.S.C. § 101(12). In

9

turn, a "claim" is broadly defined in section 101(5) as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5). A "claim" may also include a cause of action or right to payment that has not yet accrued or become cognizable. 2 *Collier on Bankruptcy* ¶ 101.05 (16th ed. 2018). Accordingly, "[a] bankruptcy court may determine the dischargeability of an unliquidated debt, or, a cause of action, without liquidating the debt." *In re Ranciato*, 638 B.R. 275, 285 (Bankr. D. Conn. 2022); *accord In re Estrin,* No. 14-04795, Adv. Pro. No. 15-80039, 2016 WL 691506, at *8 (Bankr. D.S.C. Feb. 19, 2016) ("a showing of non-dischargeability does not require a court to determine the exact amount of or the extent of the debt."); *In re Stark,* No. 06-11966-B-7, Adv. Pro. No. 07-1029, 2007 WL 2505563, at *2 (Bankr. E.D. Cal. Aug. 31, 2007) ("Even without the Judgment, this court has jurisdiction to determine the dischargeability of an unliquidated debt."), *aff'd sub nom. Stark v. Stark*, No. 1:07-CV-01366, 2009 WL 3162250 (E.D. Cal. Sept. 29, 2009), *rev'd and remanded on different grounds*, 414 F. App'x 981 (9th Cir. 2011); *First Fed. Sav. & Loan Ass'n of Rochester v. Kelley (In re Kelley),* 163 B.R. 27, 33 (Bankr. E.D.N.Y. 1993) ("[B]ankruptcy courts may determine whether unliquidated debts are dischargeable. In doing so, bankruptcy courts should address only the issue of dischargeability and not consider the extent of damages arising from the underlying debt.").

A creditor seeking to establish the nondischargeability of a debt under section 523(a) must do so by the preponderance of the evidence. *Bell v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). "Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions." *In re Jorczak,* 314 B.R. 474, 483 (Bankr. D. Conn. 2004). Accordingly,

10

"[a] debtor's scheduling of a debt constitutes a sworn statement and admission against interest, which is strongly probative of the claim's validity." *In re Ranciato*, 638 B.R. at 285 (citations omitted).

**Count One - Nondischargeability Under Section 523(a)(2)(A)**

Section 523(a)(2)(A) provides that a discharge obtained in bankruptcy does not discharge an individual debtor from "any debt for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." *In re Goldfarb*, No. 05-44431, 2006 WL 3513624, at *6 (Bankr. S.D.N.Y. Dec. 5, 2006) (quoting 11 U.S.C. § 523(a)(2)(A)).

Under section 523, to establish a debt is nondischargeable due to false representation,

> [t]he creditor must establish each of five elements: first, that the debtor made a false representation; second, that at the time it was made, the debtor knew it was false; third, that the debtor made the representation with the intent of deceiving the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained loss or damages that was proximately caused by the false representation.

*Citibank v. Olwan (In re Olwan)*, 312 B.R. 476, 482 (Bankr. E.D.N.Y. 2004); *accord Ardizzone v. Scialdone (In re Scialdone)*, 533 B.R. 53, 58-59 (Bankr. S.D.N.Y. 2015). Accepting the well-pleaded factual allegations in the Amended Complaint as true, the Plaintiff has stated a plausible claim for relief under section 523(a)(2)(A).

A false representation, generally refers to "statements that falsely purport to depict current or past facts. . . . However, [w]hen, at the time a representation is made, the debtor has no intention of performing as promised, a debtor's misrepresentation of his intentions will constitute a false representation under Code § 523(a)(2)(A)." *Vaughn v. Williams (In re Williams)*, 579 B.R. 314,

11

323 (S.D.N.Y. 2016) (citations and internal quotation marks omitted). In *In re Alejandre*, No. AP 15-AP-00459, 2015 WL 7572409, at *4 (Bankr. N.D. Ill. Nov. 23, 2015), the court addressed similar allegations where a plaintiff claimed the debtor misrepresented that loans would be used for real estate investments, but the debtor never invested or repaid the loans, instead using them for other purposes. The court found such allegations sufficient to sustain a nondischargeability action pursuant to section 523(a)(2)(A). *Id.* at *4.

The Debtor represented to the Plaintiff that she would apply the Funds towards real estate investment opportunities, Am. Complt. ¶ 6, and that the Funds would be "safe and secure and agreed to return the money within six months and make monthly payments to [the Plaintiff] during the six-month period in the amount of $1,250.00 per month," *id.* ¶ 9. The facts alleged demonstrate that those representations were false. The Debtor did not invest the Funds in real estate, or otherwise. The Debtor used the Funds to pay her personal expenses. *Id.* ¶¶ 15, 19. The first element is therefore adequately pleaded.

The facts alleged also demonstrate Debtor knew those representations were false when she made them. The Amended Complaint alleges that the Plaintiff was not the only victim of the Debtor's scheme; other investors, including Lydia Knight and Erlinda Espiritu, were sold on the same investment opportunity with identical promises of secure investments and promised returns that similarly failed to materialize. Am. Complt. ¶ 13. These investors also lost the funds they invested, as they received few, if any monthly payments, and the principal was never returned. *Id.* The Debtor was using newly invested funds to pay off existing obligations, and diverting funds to pay her personal expenses rather than the represented real estate investments. *Id.* ¶¶ 14-15. Based on those facts, it is plausible to conclude that when the Debtor solicited and accepted the Funds from Plaintiff, she knew her representations regarding the security of the investment and its

use for real estate purposes were false. *See, e.g.*, *In re Johnson*, 313 B.R. 119, 129 (Bankr. E.D.N.Y. 2004) (a representation is fraudulent if "the maker . . . knows or believes . . . the matter is *not* as represented, or does *not* have the confidence in the accuracy of his representation as stated or implied, or knows . . . he does *not* have the basis for his representation as stated or implied."). The second element is therefore adequately pleaded.

To satisfy the third element of her claim under section 523(a)(2)(A), Plaintiff must show that the Debtor made these false representations with the intent to deceive the creditor. To meet this burden, the Plaintiff "must allege facts that give rise to a strong inference of fraudulent intent. This inference may be established either '(a) by alleging facts to show [the Debtor] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *In re Christodoulakis*, No. 16-73610, 2019 WL 360064, at *6 (Bankr. E.D.N.Y. Jan. 25, 2019) (citation omitted). Notably, the Plaintiff need not expressly allege "fraud" to satisfy this element; rather, the focus is on whether the facts alleged support an inference that the Debtor intended to deceive her when making the false representations. If the Debtor had no intention of performing when she made the promises to Plaintiff, misrepresentation of her intent is sufficient to sustain a claim under section 523(a)(2)(A). *In re Williams*, 579 B.R. at 323; *accord Sharmat v. Gallen (In re Gallen)*, 559 B.R. 349, 357 (Bankr. S.D.N.Y. 2016). The Amended Complaint alleges facts demonstrating that the Debtor did not intend to invest in real estate despite her representations to the Plaintiff. Although the Debtor represented the Plaintiff's investment would be "safe and secure" and promised specific monthly payments of $1,250.00 over six months, she made only the first payment and "one or two additional payments of $500.00" before ceasing all payments entirely. Am. Complt. ¶¶ 9, 11. The facts demonstrate that in soliciting the Funds from Plaintiff, the Debtor made promises she did not

intend to keep and used new investor funds to pay prior obligations and her personal expenses. This supports an inference of intent to deceive. The third element is therefore adequately pleaded.

In assessing whether the Amended Complaint plausibly alleges that the Plaintiff's reliance was justifiable under the circumstances alleged, the inquiry is not whether a reasonable person would have relied on the Debtor's false statements; instead, the question is whether the Plaintiff's reliance was "justifiable;" it is a subjective standard. *In re Scialdone*, 533 B.R. at 61. "[A] plaintiff need not perform her own investigation of the facts underlying the representation to have justifiably relied on it, but she may not blindly rely on a misrepresentation if a cursory investigation would have uncovered the truth." *Id.* (citing *Field v. Mans,* 516 U.S. 59, 70 (1995)). The Plaintiff attended a seminar hosted by the Debtor where the Debtor solicited Plaintiff's investment, Am. Complt. ¶ 6, the Plaintiff visited the properties the Debtor claimed constituted the investment opportunity, *id.* ¶ 7, and the Plaintiff met with the Debtor in her office, where the Debtor assured the Plaintiff that the money would be "safe and secure," *id.* ¶ 9. The Amended Complaint plausibly alleges that the Plaintiff justifiably relied on the Debtor's statements and did not have a duty to investigate them when she sent Debtor the Funds.

Finally, Plaintiff plausibly alleged that she sustained loss or damage, as it is undisputed that Debtor failed to return the Funds to Plaintiff. *Id.* ¶ 11.

The allegations in the Amended Complaint, deemed admitted, establish as a matter of law, that the unliquidated debt the Debtor owes to the Plaintiff is nondischargeable under section 523(a)(2)(A). The Court grants Plaintiff a default judgment under Count One of the Amended Complaint.

14

**Count Two - Nondischargeability Under Section 523(a)(6)**

Section 523(a)(6) provides that a discharge will be denied for debts occasioned by a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To state a claim for relief under section 523(a)(6), the Plaintiff must allege facts demonstrating (i) the debtor acted willfully; (ii) that the debtor acted maliciously; and (iii) that the debtor's willful and malicious actions caused injury to the creditor or the creditor's property. *In re Marks*, 666 B.R. 104, 113 (Bankr. S.D.N.Y. 2024); *see also Collier Family Ltd. P'ship v. Mahn (In re Mahn)*, 673 B.R. 270, 282 (Bankr. S.D.N.Y. 2023).

It is settled that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Debts "arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)," even if the acts leading to such injuries may themselves be intentional. *Id.* at 64. Accordingly, "[a]n act is willful, for the purposes of § 523(a)(6) when an actor had actual intent to cause injury or 'was substantially certain that the injury would occur.'" *Owens v. Powell* (*In re Powell*), 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017) (quoting *Hough v. Margulies* (*In re Margulies*), 541 B.R. 156, 162 (Bankr. S.D.N.Y. 2015)); *see also Weiss v. Alicea* (*In re Alicea*), 230 B.R. 492, 507 (Bankr. S.D.N.Y. 1999) ("'Willful' as used in § 523(a)(6), means 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury,' and includes conduct that the actor is substantially certain will cause injury." (internal citations omitted)).

Under section 523(a)(6), the term "malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti),* 94 F.3d 84, 87 (2d Cir. 1996) (citations omitted); *see also In re Hambley,* 329 B.R.

15

382, 402 (Bankr. S.D.N.Y. 2001) (Malice does not require a showing of "personal hatred, spite, or ill-will."). "Malice may be found where the debtor breached a legal duty 'willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance to warrant the denial of a discharge.'" *Yash Raj Films (USA) v. Ahmed (In re Ahmed),* 359 B.R. 34, 42 (Bankr. E.D.N.Y. 2005) (citations omitted).

Section 523(a)(6) has been invoked in cases involving creditor/investors who were defrauded through investment schemes. *See, e.g., In re Leary,* 601 B.R. 307, 317 (Bankr. D. Conn. 2019) (debt arising from investment fraud scheme nondischargeable under section 523(a)(6)); *Berman v. Hollinger (In re Berman),* 248 B.R. 441, 445-46 (Bankr. M.D. Fla. 2000) (debt arising out of a Ponzi scheme operated by a Chapter 7 debtor nondischargeable under section 523(a)(6) as intentional theft of investor funds); *Brewer v. Jones (In re Jones),* 369 B.R. 340, 346-47 (Bankr. N.D. Ohio 2007) (conversion of client funds by debtor financial planner for personal use nondischargeable under section 523(a)(6)); *Zygulski v. Daugherty,* 236 B.R. 646, 652-53 (N.D. Ind. 1999) (finding nondischargeability under section 523(a)(6) where debtor dissipated sale proceeds from assets debtor knew were purchased with monies from wife's illegal pyramid scheme).

The Amended Complaint alleges facts from which the Court can plausibly infer that the Debtor intended to cause injury to the Plaintiff. The Debtor solicited an investment she had no intention of honoring. Am. Complt. ¶¶ 14-15. The investment was not secure, and the Debtor knew this would be the case when she solicited the investment. *Id.* These facts plausibly support an inference that the Debtor acted willfully with the intent to cause injury to Plaintiff. *See In re Soliman*, 515 B.R. 179, 191 (Bankr. S.D.N.Y. 2014).

The Amended Complaint also alleges facts to support a plausible inference that the Debtor acted maliciously. Other investors, including Lydia Knight and Erlinda Espiritu, were sold on the same investment opportunity and were promised secure investments with regular monthly returns that had not materialized. Am. Complt. ¶ 13. Their experience with the Debtor mirrored that of the Plaintiff. They invested funds with the Debtor, few, if any, received the promised monthly payments, and their investments were not returned. *Id.* Plaintiff alleges that the Debtor was "using MK Global as her alter ego, using MK Global to run a Ponzi scheme by bringing in new investments to try and pay prior obligations." *Id.* ¶ 14. Through this scheme, the Debtor caused the Funds to be diverted and used for matters other than the intended investment, including paying her personal expenses. *Id.* ¶ 15. These allegations—that the Debtor solicited investments from multiple victims with no intention of honoring the promised returns, used new investor funds to pay prior obligations, and diverted funds for personal use—describe fraudulent conduct with the aggravating circumstance of operating a Ponzi scheme, which are sufficiently specific to support a cause of action under section 523(a)(6). *Compare American Honda Finance Corp. v. Ippolito (In re Ippolito)*, No. 12-8403, 2013 WL 828316, at *2 (Bankr. E.D.N.Y. Mar. 6, 2013) (allegations defendant "actively deceived, concealed and misled [plaintiff and] personally benefited from this deception" insufficient to state a claim under section 523(a)(6)), *with In re Blankfort,* 217 B.R. 138 (Bankr. S.D.N.Y. 1998) (plaintiff stated a claim under section 523(a)(6) where defendant engaged in "socially reprehensible conduct" in repeatedly violating an injunction and other district court orders.).

The Plaintiff plausibly alleged that she sustained loss or damages, as the Amended Complaint states that the Plaintiff paid the Debtor the Funds and did not receive the promised investment return or repayment. Am. Complt. ¶¶ 10, 11.

17

In the Amended Complaint, Plaintiff has demonstrated that, as a matter of law, the unliquidated debt the Debtor owes to the Plaintiff is nondischargeable under section 523(a)(6). The Court grants Plaintiff a default judgment under Count Two of the Amended Complaint.

**Count Three - Alter Ego**

Under New York law, "claims for the imposition of liability against a defendant that rest upon allegations that such defendant is liable to the plaintiff because it is an alter ego of another entity who has not been joined as a defendant, renders the non-joined entity a necessary party." *Intelligent Prod. Sols., Inc. v. Morstan Gen. Agency, Inc.*, 5 N.Y.S.3d 328, at *2 (Sup. Ct. 2014) (citations omitted); *see also Mannucci v. Missionary Sisters of the Sacred Heart of Jesus*, 941 N.Y.S.2d 493, 494 (1st Dep't 2012) (holding a nonparty to be a necessary party under New York law where claims against the defendant were based solely on the theory that defendant is the alter ego of nonparty); *Morris v. New York State Dep't of Tax'n & Fin.*, 623 N.E.2d 1157, 1162 (1993) (finding there can be no piercing of the corporate veil where there is no corporate obligation to be imposed). "Thus, an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Morris*, 623 N.E.2d at 1160; *see also Giuliano v. Barch*, No. 16 CV 0859, 2017 WL 1234042, at *15 (S.D.N.Y. Mar. 31, 2017) (holding "to the extent that Plaintiff is asking the Court to impose corporate obligation on individual officers and directors, it must also join the corporation.").

Parties to a contract, whose contract is central to the dispute, are necessary parties. *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997). The corporate entity which is a signatory to the agreement at issue is a necessary party even if the entity is defunct, *Giuliano*, 2017 WL 1234042, at *15, or a shell corporation, *Miramax Film Corp.*

18

*v. Abraham*, No. 01 CV 5202, 2003 WL 22832384, at *9 (S.D.N.Y. Nov. 25, 2003) (noting that "shell companies are necessary parties in an action to pierce the corporate veil.").

The Plaintiff seeks a declaration that MK Global is the Debtor's alter ego. The underlying obligation at issue—repayment of the Funds the Plaintiff invested—arose out of her dealings with MK Global. The Note, which memorialized the obligation to repay the Plaintiff's $30,000 investment, was executed by the Debtor "on behalf of herself and MK Global." Am. Complt. ¶ 10. The Plaintiff seeks a declaration that MK Global is Debtor's alter ego and that MK Global's liabilities should be deemed to be Debtor's liabilities. *Id.* ¶ 27. MK Global is therefore a party to the contract central to this dispute and is a necessary party to this action.

Because MK Global has not been joined as a defendant, the Court denies the Plaintiff's request for entry of a default judgment under Count Three of the Amended Complaint.

## CONCLUSION

Based on the foregoing, the Court grants the Motion with respect to Count One and Count Two and denies the Motion with respect to Count Three. The Plaintiff shall prepare and submit a proposed judgment consistent with this Memorandum Decision and Order pursuant to Local Bankruptcy Rule 9074-1(a). The Plaintiff is granted leave to file a motion to amend Count Three of her Amended Complaint.

IT IS SO ORDERED.

Dated: December 19, 2025
      New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

19